UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JUNELL MOBLEY,

       Plaintiff,                           Hon. Wendell A. Miles

v.                                               Case No. 4:05 CV 153

WILLIAM SMITH, et al.,

       Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' FRCP 12(b)(6) Motion to Dismiss, (dkt. #67), and Plaintiff's Motion to Dismiss Defendants' Motion to Dismiss, (dkt. #75). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part** and Plaintiff's motion be **granted in part and denied in part**.


## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On May 28, 2004, Plaintiff changed his religious preference from Muslim to Judaism. Plaintiff's accompanying request to participate in the kosher meal program was granted on June 10, 2004. Because the facility at which he was then incarcerated did not offer kosher meals, prison officials arranged to transfer Plaintiff to "an appropriate Kosher menu site in a timely fashion." Plaintiff was subsequently scheduled to be transferred to the Standish Maximum Correctional Facility. However, this transfer was cancelled

on June 23, 2004, due to "security concerns" expressed by officials at the Standish facility.[1]  Plaintiff was instead transferred to the Ionia Maximum Correctional Facility (ICF) on July 21, 2004.

According to Plaintiff, shortly after arriving at ICF he was informed by Defendant Mackey that kosher meals were not available at the Ionia facility.  On August 11, 2004, Plaintiff "sent notes to all Defendants" informing them that ICF was indeed a kosher facility and requesting that "they take action."  On August 25, 2004, Plaintiff submitted a grievance directly to Step III alleging that his constitutional rights were being violated by Defendants' refusal to provide him with kosher meals.  This grievance was rejected because it was not initiated at Step I of the grievance process as required by Michigan Department of Corrections (MDOC) regulations.  Plaintiff asserts that he began receiving kosher meals on September 4, 2004.  Plaintiff further asserts, however, that during the approximately six weeks he was denied kosher meals at ICF he was denied "whole meals" and consequently endured hunger pains and weight loss.

On February 2, 2005, Plaintiff initiated a lawsuit against four of the present Defendants.  *Mobley v. Smith*, case no. 1:05-cv-85 (W.D. Mich.).  Plaintiff's claims were dismissed without prejudice on February 18, 2005, for failure to properly exhaust administrative remedies.  Plaintiff then waited more than seven months before attempting to exhaust his various claims.  On September 20, 2005, Plaintiff submitted a Step I grievance asserting that various prison officials denied him the right to freely practice his religion and deprived him of due process.  Plaintiff asserts that in response Defendants Smith and Klinesmith retaliated against Plaintiff by placing him on modified grievance access.

---

[1] In his motion to dismiss Defendants' motion, Plaintiff asserts that officials at the Standish facility were concerned because he had previously attempted to escape from the Standish facility.  (Dkt. #77).

Plaintiff initiated the present action on December 30, 2005, alleging that Defendants: (1) denied him the right to freely practice his religion; (2) improperly retaliated against him for exercising his constitutional rights; (3) deprived him of the right to due process; and (4) subjected him to cruel and unusual punishment. Defendants Smith, Norwood, Caruso, and Klinesmith now move for the dismissal of Plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has responded by moving for the dismissal of Defendants' motion to dismiss. Despite its title, Plaintiff's motion is simply a response in opposition to Defendants' motion to dismiss. As discussed below, the Court recommends that Defendants' and Plaintiff's motions each be granted in part and denied in part.

## STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for failure to state a claim upon which relief may be granted where, even accepting as true Plaintiff's allegations and construing the complaint liberally in his favor, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## ANALYSIS

**I.         Defendants have not Established that Plaintiff Failed to Exhaust his Claims**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007). Instead, failure to exhaust administrative

remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

Plaintiff included with his complaint copies of several grievances he allegedly pursued before initiating the present action. Defendants assert, however, that these grievances fail to establish that Plaintiff properly exhausted any of the claims asserted in his complaint. In response, Plaintiff does not allege that he submitted other previously unidentified grievances or pursued any other action in an attempt to properly exhaust the claims in his complaint. Instead, Plaintiff reiterates that the materials he submitted with his complaint demonstrate his compliance with the PLRA's exhaustion requirement.

In *Woodford v. Ngo*, 126 S.Ct. 2378 (2006), the Court concluded that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386-87. In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 127 S.Ct. at 922-23.

Pursuant to the relevant MDOC policy, grievances "may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ E (effective Dec. 19, 2003). The allegations in the grievance must be "stated briefly" and the "information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how)." *Id.* at ¶ T.

On September 20, 2005, Plaintiff submitted a Step I grievance in which he alleged that prison officials at ICF refused his requests to receive kosher meals despite having previously been

approved to receive such. (Dkt. #1, Exhibit 11). Plaintiff asserted that as a result he "lost weight from lack of food," was deprived of the right to practice his religion, and was denied due process. *Id.* The contents of this grievance were sufficient to put prison officials on notice that Plaintiff was alleging the following: (1) a denial of his right to freely practice his religion; (2) denial of the right to due process; and (3) denial of the right to be free from cruel and unusual punishment. These allegations are consistent with counts I-III of Plaintiff's complaint. Plaintiff asserts that he pursued this grievance through Step III of the grievance process. Defendants have failed to demonstrate otherwise.

The remaining claim in Plaintiff's complaint is that he was placed on modified grievance access as retaliation for filing a grievance regarding the refusal by prison officials to provide him with a kosher diet. With respect to this claim, Plaintiff filed a step I grievance on September 27, 2005, alleging that prison officials improperly retaliated against him for filing a grievance regarding the refusal by prison officials to provide him with a kosher diet. (Dkt. #1, Exhibit 14). Plaintiff asserts that he pursued this grievance through all three steps of the grievance process. Defendants have not established otherwise.

In sum, Defendants have not carried their burden of demonstrating that Plaintiff failed to properly exhaust administrative remedies with respect to the claims asserted in his complaint.

**II.        Plaintiff has Failed to State a Claim for Violation of his Due Process Rights**

Plaintiff asserts that Defendants deprived him of his right to due process by temporarily failing to provide him kosher meals. Because Plaintiff has not indicated whether he is asserting a violation of his substantive or procedural due process rights, the Court shall assume that he has asserted a violation of both such rights. Defendants assert that such claims must be dismissed. The Court agrees.

A. Substantive Due Process

In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court addressed the interaction between substantive due process and those rights specifically protected by the Bill of Rights, as well as the proper constitutional foundation upon which to base a § 1983 action.

In that case, Albright was charged with selling a substance that looked like an illegal drug. Following a preliminary hearing, Albright was bound over for trial; however, the court later dismissed the charges because the offense with which Albright was charged did not state an offense under Illinois law. Albright subsequently initiated a § 1983 action in which he charged Oliver, a detective involved in the case, with depriving him of his Fourteenth Amendment substantive due process rights by subjecting him to criminal prosecution without probable cause. *Id.* at 268-70.

The Court observed that substantive due process protection had "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Southeast Pa. v. Casey*, 505 U.S. 833, 847-849 (1992)). The Court noted the dissimilarity between Albright's claim and the substantive due process rights recognized previously, and further noted its reluctance to expand the concept of substantive due process. *Id.* at 271-72.

The Court then discussed the fact that a number of the protections contained in the Bill of Rights have been made applicable to the states via the Fourteenth Amendment. The Court observed that this process has resulted in the substitution of the specific guarantees of these portions of the Bill of Rights for the more generalized language of the Fourteenth Amendment. *Id.* at 272-73. The Court, therefore, concluded that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.*

at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Applying this standard, the Court concluded that Albright's allegations directly implicated the Fourth Amendment, pursuant to which he must bring his claim, because substantive due process could afford him "no relief." *Id.* at 274-75.

Here, Plaintiff alleges that his due process rights were violated because Defendants violated his First Amendment right to freely exercise his religion. This right is sufficiently protected by the First Amendment. Therefore, as in *Albright*, substantive due process can provide Plaintiff no relief. Accordingly, to the extent that Plaintiff asserts that Defendants violated his substantive due process rights, the Court recommends that such claim be dismissed.

### B. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of life, liberty, or property. A person seeking to invoke the procedural protections of the Fourteenth Amendment must establish that - as a result of government action - he was deprived of life, liberty, or property. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff was not deprived of life or property. To avoid dismissal of this particular claim, therefore, he must demonstrate that he was deprived of a liberty interest.

It is well recognized that the liberty interests protected by the procedural due process clause of the Fourteenth Amendment are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

While the Court does not take lightly Plaintiff's allegations, the Court finds that Plaintiff's allegation that he was temporarily deprived of kosher meals simply fails to satisfy this standard. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (temporary limitations on ability to freely practice religion do not present "an atypical and significant hardship"); *Daly v. Lappin*, 2006 WL 468723 at *2-3 (S.D. Ill., Feb. 27, 2006) (temporary deprivation of kosher diet does not constitute "an atypical and significant hardship"). Accordingly, to the extent that Plaintiff asserts that Defendants violated his procedural due process rights, the Court recommends that such claims be dismissed.

### III.     Plaintiff has Failed to State a Claim for Retaliation

Plaintiff claims that on September 20, 2005, he submitted a grievance asserting that prison officials had deprived him of the right to freely practice his religion by denying his requests for kosher meals. According to Plaintiff, Defendants Klinesmith and Smith placed him on modified grievance access in retaliation for filing this grievance.

Pursuant to MDOC policy, if a prisoner files an "excessive number" of inappropriate grievances he may be placed on modified grievance access. Michigan Department of Corrections Policy Directive 03.02.130 ¶ JJ (effective Dec. 19, 2003). Prisoners placed on modified grievance are still permitted to file grievances, so long as such grievances are not inappropriate. Inappropriate grievances include those which are frivolous, vague, duplicative, raise non-grievable issues, contain profanity, threats of physical harm, or language which demeans the character, race, ethnicity, physical appearance, gender, religion, or national origin of any person (unless such language is essential to the description of the grieved behavior). *Id.* at ¶¶ G, JJ. Furthermore, a prisoner may be placed on modified grievance

access if he files an *unfounded* grievance (as determined by an investigation) containing allegations which could have caused an employee or prisoner to suffer discipline or corrective action. *Id.* at ¶ L.

To establish that he was subjected to unlawful retaliation, Plaintiff must establish the following: (1) he was engaged in constitutionally protected conduct; (2) he suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct; and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Even assuming Plaintiff can establish the first and third prongs of the analysis, he has failed to allege that he suffered an adverse action which would deter a person of ordinary firmness from continuing to file grievances. The Sixth Circuit has repeatedly held that "[b]eing placed on modified [grievance] access status would not deter a person of ordinary firmness from pursuing non-frivolous grievances against prison officials, within the courts or the prison administrative system." *Jackson v. Madery*, 158 Fed.Appx. 656, 660 (6th Cir., May 30, 2006); *see also*, *Walker v. Michigan Dep't of Corrections*, 128 Fed.Appx. 441, 446 ("an ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances"); *Moore v. Sergent*, 22 Fed.Appx. 472, 474 (Oct. 26, 2001) (because a prisoner on modified access is "still free to file grievances. . .he has not been subjected to retaliation"); *Kennedy v. Tallio*, 20 Fed.Appx. 469, 471 (6th Cir., Sept. 26, 2001) (placement on modified grievance access does not constitute adverse action sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct). Accordingly, the Court recommends that Plaintiff's retaliation claims be dismissed.

**IV.          Plaintiff has Stated a Claim for Violation of his Right to Freely Practice his Religion**

Defendants assert that Plaintiff's First Amendment claims must be dismissed because they "did not deny Plaintiff his kosher diet, and did not deny Plaintiff the ability to exercise religious freedom." In their brief, Defendants acknowledge that Plaintiff was denied kosher meals for approximately six weeks. Defendants further assert, however, that Plaintiff suffered this deprivation because he failed to provide evidence that he had been approved to participate in the kosher meal program. Specifically, Defendants assert the following:

> Prison officials has (sic) a legitimate interest in receiving conformation (sic) of a prisoner's new religious election before altering services provided to that prisoner. Upon his transfer to Ionia, Plaintiff could have begun receiving his kosher diet at any time. All that was required was for Plaintiff to show that he had been previously approved for the diet at another prison. In fact, once Plaintiff finally filed a grievance and made the necessary showing, he was immediately placed on a kosher diet.

Defendants' argument cannot prevail. Defendants have moved for the dismissal of Plaintiff's First Amendment claims on the grounds that such fail to state a claim on which relief may be granted. When moving to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b) the court must focus exclusively on the allegations contained in the plaintiff's complaint. Assertions contained in the defendants' pleadings - especially those lacking any evidentiary support - are utterly irrelevant.

In his complaint, Plaintiff asserts that prison officials granted his request to participate in the kosher meal program, and such is circumstantial evidence that Plaintiff's religious beliefs are sincerely held. Plaintiff further asserts that after arriving at the Ionia facility he notified "all Defendants" that he was entitled to receive a kosher diet. According to Plaintiff, Defendants denied his requests for kosher meals, informing him that kosher meals were not even available at ICF, despite the fact that Plaintiff was transferred to ICF specifically so that he could receive kosher meals. Such allegations are

sufficient to state a claim for the denial of the First Amendment right to freely practice one's religion. *See, e.g., Figel v. Riley*, 2006 WL 2472208 at *4 (W.D. Mich., Aug. 24, 2006) (the First Amendment protects prisoners whose sincerely held religious beliefs require the consumption of only kosher food). Accordingly, the Court recommends that Plaintiff's First Amendment claims be permitted to go forward.

V.	**Plaintiff has Stated a Claim for Violation of his Right to be Free from Cruel and Unusual Punishment**

Defendants assert that Plaintiff's claim that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment must be dismissed "because no facts have been alleged to support those claims." The Court disagrees.

In his complaint, Plaintiff asserts that Defendants knowingly denied him the right to participate in the kosher meal program. Plaintiff further asserts that as a result he was unable to eat "whole meals" which caused him to suffer "hunger pains" and weight loss. Intentional deprivation of sufficient quantities of food for a period of six weeks causing pain and weight loss - if proven - states a claim under the Eighth Amendment. *See*, *e.g.*, *Abdur-Reheem-X v. McGinnis*, 1999 WL 1045069 at *2 (6th Cir., Nov. 12, 1999) (a serious deprivation of a basic human need such as food violates the Eighth Amendment) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981)). Accordingly, the Court recommends that Plaintiff's Eighth Amendment claims be permitted to go forward.

**VI.        Defendants are not Entitled to Qualified Immunity**

Defendants also assert that they are entitled to qualified immunity. The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.*

Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996); *Hughes v. City of North Olmsted*, 93 F.3d 238, 241 (6th Cir. 1996). The question of whether qualified immunity attaches to an official's actions is purely a legal question for the trial judge to determine prior to trial. *See Bell-Bey v. Williams*, 87 F.3d 832, 836 (6th Cir. 1996).

In determining whether an official is entitled to qualified immunity, the focus is on the objective legal reasonableness of the official's actions in light of clearly established law. *See Harlow*, 457 U.S. at 818; *Bell-Bey,* 87 F.3d at 836. Defendants are entitled to qualified immunity unless the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The unlawfulness of the conduct at issue must be apparent in light of pre-existing law. *See Anderson*, 483 U.S. at 640.

Generally, to find a clearly established constitutional right, the district court must find binding precedent by the Supreme Court, its Court of Appeals or itself. *See Ohio Civil Serv. Employees*

*Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. *Id.* A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

With respect to Plaintiff's First and Eighth Amendment claims, no credible argument can be advanced that a reasonable official would fail to have understood that the actions which Plaintiff *alleges* Defendants to have undertaken violate Plaintiff's constitutional rights. The Court recommends, therefore, that Defendants are not entitled to qualified immunity as to such claims.

**VII.**     **Plaintiff's Claims against Defendant Lewis**

Plaintiff initiated the present action on December 30, 2005. On January 18, 2006, the Court directed that Plaintiff's complaint be served on all Defendants. Service was successfully effected on Defendants Smith, Norwood, Caruso, Mackey, and Klinesmith. The attempts to serve Defendant Lewis, however, were unsuccessful. Plaintiff has yet to serve this action on Defendant Lewis and, moreover, has not requested the Court's assistance in effecting service on this Defendant.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after

notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).

Considering Plaintiff's lack of diligence in attempting to effect service on Defendant Lewis, the Court recommends that Plaintiff's claims against Defendant Lewis be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

As discussed herein, the Court recommends that Defendants' FRCP 12(b)(6) Motion to Dismiss, (dkt. #67), be **granted in part and denied in part**. The Court also recommends that Plaintiff's Motion to Dismiss Defendants' Motion to Dismiss, (dkt. #75), be **granted in part and denied in part**. Specifically, the Court recommends that Plaintiff's retaliation and due process claims be dismissed for failure to state a claim upon which relief may be granted. The Court further recommends that Plaintiff's First Amendment and Eighth Amendment claims be permitted to go forward. Finally, the Court recommends that Defendants are not entitled to qualified immunity as to Plaintiff's First Amendment and Eighth Amendment claims.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                              Respectfully submitted,

Date:  March 28, 2007                            /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge