UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUNELL MOBLEY,

        Plaintiff,                                Hon. Wendell A. Miles

v.                                                 Case No. 4:05 CV 153

WILLIAM SMITH, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #149). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action dismissed.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. (Dkt. #1). On May 28, 2004, Plaintiff changed his religious preference from Muslim to Judaism. Plaintiff's accompanying request to participate in the kosher meal program was granted on June 10, 2004. Because the facility at which he was then incarcerated did not offer kosher meals, prison officials arranged to transfer Plaintiff to "an appropriate Kosher menu site in a timely fashion." Plaintiff was subsequently scheduled to be transferred to the Standish Maximum Correctional Facility. However, this transfer was cancelled

on June 23, 2004, due to "security concerns" expressed by officials at the Standish facility.[1] Plaintiff was instead transferred to the Ionia Maximum Correctional Facility (ICF) on July 21, 2004.

According to Plaintiff, shortly after arriving at ICF he was informed by Defendant Mackey that kosher meals were not available at the Ionia facility. On August 11, 2004, Plaintiff allegedly "sent notes to all Defendants" informing them that ICF was indeed a kosher facility and requesting that "they take action." On August 25, 2004, Plaintiff submitted a grievance directly to Step III alleging that his constitutional rights were being violated by Defendants' refusal to provide him with kosher meals. This grievance was rejected because it was not initiated at Step I of the grievance process as required by Michigan Department of Corrections (MDOC) regulations. Plaintiff asserts that he began receiving kosher meals on September 4, 2004.

On February 2, 2005, Plaintiff initiated a lawsuit against four of the present Defendants. *Mobley v. Smith*, case no. 1:05-cv-85 (W.D. Mich.). Plaintiff's claims were dismissed without prejudice on February 18, 2005, for failure to properly exhaust administrative remedies. Plaintiff then waited more than seven months before attempting to exhaust his various claims. On September 20, 2005, Plaintiff submitted a Step I grievance asserting that various prison officials denied him the right to freely practice his religion and deprived him of due process. Plaintiff asserts that in response to this grievance, Defendants Smith and Klinesmith retaliated by placing him on modified grievance access.

Plaintiff initiated the present action on December 30, 2005, alleging that Defendants: (1) denied him the right to freely practice his religion; (2) improperly retaliated against him for exercising his constitutional rights; (3) deprived him of the right to due process; and (4) subjected him to cruel and unusual punishment. On June 4, 2007, the Honorable Wendell A. Miles dismissed all the claims in

---

[1] In his motion to dismiss Defendants' motion, Plaintiff asserts that officials at the Standish facility were concerned because he had previously attempted to escape from the Standish facility. (Dkt. #77).

Plaintiff's complaints, save the free exercise claims asserted against Defendants Smith and Norwood, which were permitted to go forward. (Dkt. #96). Defendants Smith and Norwood now move for summary judgment of these remaining claims. As discussed below, the Court recommends that Defendants' motion be granted and Plaintiff's action dismissed.

## STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.

## ANALYSIS

Liability in a § 1983 action cannot be based upon a theory of respondeat superior or vicarious liability, as Plaintiff must instead allege personal involvement by a particular defendant.  *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (liability cannot be premised on passive behavior or an alleged failure to act, rather the defendant "must have actively engaged in unconstitutional behavior"); *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (same).  Because

Plaintiff has failed to establish that either Defendant Smith or Defendant Norwood was personally involved in the events giving rise to the claims at issue, both Defendants are entitled to summary judgment.

          A.      Defendant Smith

As previously noted, Plaintiff has included with his complaint a copy of an August 4, 2004 letter he allegedly sent to Defendant Smith. However, despite having had more than two years during which to conduct discovery, Plaintiff offers no evidence that Defendant Smith ever received this letter or was aware of its contents. On the other hand, Defendant Smith offers unrefuted evidence that he did not receive the letter in question and was unaware of the brief difficulty Plaintiff experienced receiving kosher meals.

Defendant Smith has submitted an affidavit executed by Roger Groves, who during the time period relevant in this matter, was employed as Warden Smith's administrative assistant. According to Groves, prisoner correspondence is not reviewed by the warden when received "unless it pertains to a potential safety and security concern that requires his immediate attention." (Dkt. #150, Exhibit 1). Groves asserts that Plaintiff's August 4, 2004 letter to Defendant Smith would not have been reviewed by the warden, but would instead have been directed to Groves' office "for review and possible action or referral." In this instance, Plaintiff's letter would have been referred to "either the Chaplain, Food Service Director or housing unit Resident Unit Manager RUM for review and possible action." Groves asserts that he did not personally become aware of this matter until receiving Plaintiff's September 1, 2004 grievance. At this juncture, Groves initiated action which resulted in Plaintiff receiving kosher meals beginning on September 4, 2004. *Id.*

Defendant Smith has also executed an affidavit in this matter. Smith asserts that he "did not typically read prisoners' transfers orders, and did not read Prisoner Mobley's transfer order upon his arrival at ICF." (Dkt. #150, Exhibit 2). As Smith further asserts, "it is not the normal course of business for either the Warden or the Deputy Warden to review the institutional file of a prisoner, or to know why a prisoner was transferred into the facility unless there are some emergent security concerns that require their knowledge." Smith asserts that "nothing in Prisoner Mobley's July 2004 transfer order would have come to my attention when he transferred into ICF."

With respect to the August 4, 2004 letter that Plaintiff directed to his attention, Defendant Smith asserts that such "would have been read and addressed by my staff, but not by me." Smith asserts that "the first time [he] saw this correspondence was after Plaintiff served his Federal Court Complaint on [him.]" Defendant Smith further asserts that he was not aware that Plaintiff had experienced difficulty receiving kosher meals until "being served with the Complaint in this lawsuit." *Id.*

In response to the evidence submitted by Defendant Smith, Plaintiff asserts that Smith had to have known of his inability to receive kosher meals because Smith "was misappropriating funds by illegally closing down the kosher kitchen at Ionia Max and transferring all of the Jewish inmates to other prisons in order to use the kosher funds for their own purposes." (Dkt. #152 at 3). Plaintiff asserts that "an undertaking of that magnitude cannot occur without the approval of the warden." According to Plaintiff's theory, the reason he was unable to receive kosher meals after arriving at ICF was because due to Defendant Smith's illegal activities "Defendants had no kosher food to give Plaintiff." *Id.* Plaintiff offers absolutely no evidence to support these allegations. Moreover, such allegations are contradicted by evidence submitted by Defendants, which reveals that kosher meals were being served to Jewish prisoners at ICF during the time period in question. (Dkt. #155, Exhibit 2).

Again, despite having more than two years to engage in discovery Plaintiff has failed to present any evidence that Defendant Smith was aware of the difficulty he experienced receiving kosher meals for a brief period during the summer of 2004. Instead, Plaintiff relies on an unsubstantiated theory that Defendant Smith was engaged in a criminal conspiracy. Such is insufficient to survive a properly supported motion for summary judgment. Accordingly, the Court recommends that Defendant Smith is entitled to summary judgment on the ground that Plaintiff has failed to establish that Smith engaged in unconstitutional conduct or was in any way involved in the events giving rise to this claim.

      B.    Defendant Norwood

At his deposition, Plaintiff testified that copies of all of the correspondence he authored to prison officials at ICF in an attempt to obtain kosher meals was attached to his complaint. (Dkt. #155, Exhibit 1). A review of Plaintiff's complaint reveals that on August 4, 2004, Plaintiff authored notes to Defendants Smith, Mackey, Lewis, and Caruso in which he requested that he be provided with kosher meals. (Dkt. #1, Exhibits 5-8). However, Plaintiff's complaint contains no evidence that he ever notified Defendant Norwood that he was not receiving kosher meals. (Dkt. #1). Plaintiff has attached to his complaint a copy of a grievance he submitted against several Defendants, including Defendant Norwood, concerning his inability to receive kosher meals from July 21, 2004, through September 4, 2004. (Dkt. #1, Exhibit 11). However, this grievance was not completed until September 20, 2005, more than one year after Plaintiff began receiving kosher meals. Thus, this grievance does not establish that during the relevant time period (i.e., the brief period during the summer of 2004 during which Plaintiff did not receive kosher meals) Defendant Norwood had knowledge of Plaintiff's difficulty receiving kosher meals.

Defendant Norwood has submitted an affidavit in which she asserts that as of July 21, 2004, the date on which Plaintiff arrived at ICF, she was assigned to a different correctional facility and, therefore, did not review Plaintiff's transfer order to ICF.  (Dkt. #150, Exhibit 3).  Defendant Norwood asserts that she did not begin working at ICF until August 1, 2004, at which time she was not informed of Plaintiff's request to receive kosher meals.  Defendant Norwood asserts that she did not learn of Plaintiff's difficulty receiving kosher meals in the summer of 2004 until she was served with a copy of Plaintiff's complaint.  *Id.*  Again, despite having more than two years to conduct discovery on the fundamental issue of Defendant Norwood's involvement (or lack thereof) in this matter, Plaintiff has submitted no evidence that contradicts the assertions contained in Defendant Norwood's affidavit.

In response to Defendants' motion, Plaintiff simply reasserts the unsubstantiated allegations contained in his complaint. (Dkt. #152).  Plaintiff has also submitted an affidavit in which he asserts that on August 4, 2004, he sent a letter to Defendant Norwood in which he complained "of not receiving kosher meals."[2]  (Dkt. #153).  Despite this assertion, the Court finds that Defendant Norwood is entitled to summary judgment.  As previously noted, to survive a motion for summary judgment Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts."  Plaintiff may not rest upon his allegations, but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  In light of the substantial evidence presented by Defendant Norwood, the Court finds that Plaintiff's unsubstantiated assertion (which is contradicted by Plaintiff's own deposition testimony) is insufficient to defeat Defendant

---

[2] Plaintiff also asserts in his affidavit that "in August 2004," case manager Vroman told him that Defendant Norwood told Vroman that she would "check into" Plaintiff's request to receive kosher meals.  While this assertion seems to suggest that Defendant Norwood knew of Plaintiff's predicament, Vroman's statement constitutes hearsay and, therefore, cannot be considered in this context of a motion for summary judgment.  *See* Fed. R. Civ. P. 56; *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997) (the only evidence that the Court can consider on a motion for summary judgment is evidence that would be admissible at trial).

Norwood's motion for summary judgment. Accordingly, the Court recommends that Defendant Norwood is entitled to summary judgment on the ground that Plaintiff has failed to establish that Norwood engaged in unconstitutional conduct or was in any way involved in the events giving rise to this claim.

## CONCLUSION

As discussed herein, the Court recommends that Defendants' Motion for Summary Judgment, (dkt. #149), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: June 13, 2008                              /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge